UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|   |   |   |
|---|---|---|
| SUSAN SZUCS RODWAY, | ) | Case No. 1:18CV0169 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE JAMES S. GWIN |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
|  | ) |  |
| COMMISSIONER OF SOCIAL | ) |  |
| SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Susan Szucs Rodway ("Rodway" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a

period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act").  This court has jurisdiction pursuant to 42

U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to

an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the

reasons set forth below, the Magistrate Judge recommends that the Commissioner's final

decision be vacated and remanded.

I.  PROCEDURAL HISTORY

On January 4, 2015, Rodway protectively filed an application for a POD and DIB,

alleging disability beginning December 1, 2014.  (R. 10, Transcript ("tr."), at 14, 215-216, 240-

242, 254-269.)  Rodway's application was denied initially and upon reconsideration.  (R. 10, tr.,

at 137-151, 152-168.)  Thereafter, Rodway filed a request for a hearing before an administrative

law judge ("ALJ").  (R. 10, tr., at 181-182.)  The ALJ held the hearing on August 10, 2016.  (R.

10, tr., at 86-136.)  Rodway appeared at the hearing, was represented by counsel, and testified.

(*Id.* at 88, 94-128.)  A vocational expert ("VE") also attended the hearing and provided

testimony.  (*Id.* at 88, 129-134.)

On October 28, 2016, the ALJ issued his decision, applying the standard five-step

sequential analysis to determine whether Rodway was disabled.  (R. 8, tr., at 14-37; *see generally*

20 C.F.R. § 404.1520(a).)  Based on his review, the ALJ concluded Rodway was not disabled.

*Id.* at 37.  The Appeals Council denied Rodway's request for review, thus rendering the ALJ's

decision the final decision of the Commissioner.  (R. 10, tr., at 1-4.)  Rodway challenges the

Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed

briefing in this case.

Rodway presents the following legal issues for the court's review:

1. The ALJ committed an error of law and the decision is not supported by
   substantial evidence as the ALJ failed to provide explanation of whether
   Susan's fibromyalgia and chronic migraines and the resulting symptoms and
   functional limitations therefrom meet or equal the listings.

2. The ALJ erred by not following the requirements of SSR 96-8p when making
   the RFC finding, and the RFC finding is not supported by substantial
   evidence.

3. The ALJ erred by failing to follow SSR 96-7p when assessing [Rodway's]
   credibility, and the ALJ's credibility finding is not supported by substantial
   evidence.

(R. 13, PageID #: 1373-1374.)

## II.  PERSONAL BACKGROUND INFORMATION

Rodway was born in 1969 and was 45 years old on the alleged disability onset date.  (R.

10, tr., at 36, 94, 215.)  Accordingly, Rodway was considered a younger individual age 18-49 for

Social Security purposes.  *See* 20 C.F.R. § 404.1563.  She has an M.B.A., can communicate in

English, and has past relevant work as Director of Development and Executive Director.  (R. 10, tr., at 36, 96, 130-31, 254, 256.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Rodway's brief alleging error by the ALJ.  As noted earlier, Rodway applied for DIB benefits on January 4, 2015, alleging disability beginning December 1, 2014.  (R. 10, Transcript ("tr."), at 14, 215-216.)  She listed her physical or mental conditions that limit her ability to work as: "migraine headaches; arthralgia; rheumatoid arthritis; sleep disorder; anxiety/panic disorder; fatigue; brain fog? [sic] inability to concentrate, focus, think at times; autoimmune disorder."  (R. 10, tr., at 255.)

On March 27, 2015, rheumatologist Linda Mileti, M.D., completed a Mental and Physical Impairment Report.[2]  (R. 10, tr., at 873-880.)  Dr. Mileti began treating Rodway on January 31, 2014, and diagnosed her with rheumatoid arthritis and fibromyalgia.  *Id.* at 873.  Rodway's primary symptoms were joint and muscle pain. *Id.*  The doctor indicated that stress increases pain from fibromyalgia.  *Id.*  In addition, when Rodway has a rheumatoid arthritis flare, it can limit her ability to walk or use her hands.  *Id.* at 874.  In her March 2015 report, Dr. Mileti opined that Rodway was not able to function in a competitive work setting, primarily due to migraines, depression and anxiety.  *Id.*

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

[2]  In her brief, Rodway mistakenly attributes this report to Dr. Radbourne.  *See* R. 13, PageID #: 1383.  However, this report is signed by Dr. Mileti.  *See* R. 10, tr., at 875, 880.

Dr. Mileti reported that Rodway's rheumatoid arthritis treatment "has been very effective," with a good prognosis.  (R. 10, tr., at 874.)  The doctor noted that treatment for fibromyalgia relies on proper sleep, exercise, and control of her anxiety, depression, and migraines; and Rodway's response has "waxed and waned."  *Id.*  Rodway had missed work primarily due to migraines, depression, and anxiety, which other providers were treating.  *Id.* at 875.  The rheumatologist indicated that Rodway's fibromyalgia caused stiffness, disturbed sleep, chronic fatigue, memory loss, and a history of widespread pain for three or more months.  *Id.* at 878.  Dr. Mileti did not indicate that Rodway had pain in eleven or more pressure points, nor did the doctor indicate that other disorders were excluded as possible causes of Rodway's pain.  *Id.* *See generally* SSR 12-2p, 2012 WL 3104869, at *2-*3.

On April 2, 2015, therapist Susan Radbourne, Ph.D., completed a Mental and Physical Impairment Report.  (R. 10, tr., at 882-889.)  Dr. Radbourne treated Rodway since January 6, 2012, and diagnosed her with generalized anxiety disorder, panic disorder, and major depression.  *Id.* at 882.  Rodway's primary symptoms were anxiety, worry, depression, and fatigue, which were triggered by stress and dealing with family.  *Id.*  Rodway's anxiety caused stress leading to physical symptoms of exhaustion, lack of concentration and panic.  *Id.* at 883.  Dr. Radbourne noted Rodway used therapy well; and followed the "recommendation such as to see a psychiatrist."  *Id.*  Dr. Radbourne characterized Rodway's prognosis as "guarded due to her medical conditions."  *Id.*  Rodway had marked limitations in her activities of daily living, along with marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  *Id.* at 885-886.  In her April 2015 report, the therapist opined that Rodway's

4

"medical conditions and psychological conditions, which are linked, make it impossible for [Rodway] to work at this time." *Id.* at 884.

Dr. Radbourne completed a second Mental and Physical Impairment Report on December 28, 2015, and diagnosed generalized anxiety disorder and major depression. (R. 10, tr., at 894-901.) Rodway's primary symptoms were depression, sadness, anxiety, worry, grief and ongoing physical pain. *Id.* Encounters with other people, stress, dealing with family, and leaving the home environment were among the situations that cause or trigger her symptoms. *Id.* Rodway reported a lack of motivation, focus and concentration, due to her depression and ongoing migraine headaches. *Id.* at 895. Dr. Radbourne opined that Rodway was not able to function in a competitive work setting; and reported her prognosis as guarded: "The stressors of her health issues [and] unemployment fears exacerbate her anxiety and depressed mood." (R. 10, tr., at 895.) Again, the therapist found Rodway had marked limitations in her activities of daily living, and marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. *Id.* at 897-898.

Rodway's primary care physician, James Hekman, M.D., completed a Mental and Physical Impairment Report on January 2, 2016. (R. 10, tr., at 903-910.) Dr. Hekman began treating Rodway on April 15, 2011, and diagnosed her with rheumatoid arthritis, fibromyalgia, migraine/aura, panic/anxiety and sleep apnea. *Id.* at 903. Rodway's primary symptoms were fatigue, pain, and "diminished functional status." *Id.* Dr. Hekman indicated Rodway had identified coping with supervisors, coworkers or the public, as well as the stress of having time or productivity demands, as situations that trigger her symptoms. *Id.* Rodway's condition(s),

5

according to the doctor, restrict her daily activities because she becomes fatigued and exhausted by minimal activity.  *Id.* at 904.  In addition, daily migraines impair focus and concentration.  *Id.*

Dr. Hekman reported that Rodway's medications "possibly" had side effects; they "may" lead to worsening of migraines and fatigue.  (R. 10, tr., at 904.)  Rodway's response to treatment had worsened over the years, and her prognosis was poor.  *Id.*  Dr. Hekman indicated that Rodway had migraine headaches several times a week.  *Id.* at 908.  Rodway's fibromyalgia caused a sensation of swollen hands, sleep disturbance, chronic fatigue, pain in eleven or more pressure points, and resulted in a history of widespread pain for three or more months.  *Id.*

On January 10, 2016, neurologist Joseph Zayat, M.D., completed a Mental and Physical Impairment Report.  (R. 10, tr., at 912-920.)  He began treating Rodway on October 31, 2011, and diagnosed migraines with aura.  *Id.* at 912.  Rodway's primary symptom was "headache," which was caused by stress stemming from encounters with other people. *Id.*  Dr. Zayat indicated "when the headaches are frequent they become disabling" and restrict her daily activities.  *Id.* at 913.  The doctor noted that because the headaches are frequent, they impact Rodway's ability to sustain concentration and attention, and affect her ability to work.  *Id.*  Dr. Zayat opined that Rodway can be incapacitated 2-3 times a month, lasting 2-3 days each, and she is not able to function in a competitive work setting.  *Id.*  In addition, he indicated Rodway would be absent more than three times per month, because she has an unpredictable chronic and episodic condition.  *Id.* at 914.

Rheumatologist Dr. Mileti completed a second Mental and Physical Impairment Report on January 15, 2016.  (R. 10, tr., at 922-929.)  The doctor last examined Rodway on February 13, 2015, which was the same date of last examination she reported in her March 27, 2015, report.

*Compare* tr., at 922, with tr., at 873.  Rodway remained diagnosed with rheumatoid arthritis and fibromyalgia, with fatigue and muscle aches as primary symptoms.  *Id.* at 922.  Although Dr. Mileti had not seen Rodway in nearly one year, she assessed a good response to rheumatoid arthritis and fibromyalgia treatment and a "good prognosis."  *Id.* at 923.  The assessment of Rodway's fibromyalgia remained largely the same: Rodway had stiffness, disturbed sleep, chronic fatigue, memory loss, and a history of widespread pain for three or more months, with the addition of tension headaches.  *Id.* at 927.  The rheumatologist did not indicate that Rodway had pain in eleven or more pressure points, nor did she indicate that other disorders were excluded as possible causes of Rodway's pain.  *Id.*

   State agency medical consultant Gary Hinzman, M.D., completed a physical residual functional capacity assessment on March 5, 2015.  (R. 10, tr., at 144-146.)  The doctor assessed a range of light exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday, due to her rheumatoid arthritis, fibromyalgia, and migraines.  (R. 10, tr., at 145.)  Rodway can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  *Id.*  She must avoid concentrated exposure to hazards, and particularly to refrain from hazardous heights and machinery, due to her rheumatoid arthritis, fibromyalgia, and migraines.  *Id.* at 146.

On reconsideration, state agency medical consultant Edmond Gardner, M.D., completed a physical RFC assessment for Rodway on June 3, 2015.  (R. 10, tr., at 160-162.)  Dr. Gardner adopted the identical limitations identified by Dr. Hinzman.  *Id.*

IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the October 28, 2016, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since  December 1, 2014, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  migraines, fibromyalgia, rheumatoid arthritis, sleep apnea, anxiety, and affective disorder (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) except that the claimant can never climb ladders, ropes or scaffolds. She can have only occasional exposure to unprotected heights, moving mechanical parts, and vibration.  The claimant can tolerate only moderate noise levels.  She can tolerate a work environment with no production rate pace requirements.  The claimant is limited to simple work-related decisions.  She can have occasional interaction with supervisors, coworkers, and the public.  The claimant can tolerate routine workplace changes where any significant changes should be explained in advance and introduced gradually.  She will be absent from work for one day a month.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on *** 1969, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2014, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 16, 18, 36, 37.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional

capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*,

321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may

examine all the evidence in the record, regardless of whether such evidence was cited in the

Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241,

245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D.

Mich. Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

A.  Whether Rodway's Impairments Meet or Equal a Listing

The claimant's first assignment of error is that the ALJ erred by not including an

"explanation of whether [claimant's] fibromyalgia and chronic migraines and the resulting

symptoms and functional limitations" meet or equal a Listing.  (R. 13, PageID #: 1373, 1389.)

At Step Two, the ALJ determined that Rodway has, among her other impairments, the

severe physical impairments of migraines and fibromyalgia.  (R. 10, tr., at 16.)  The ALJ was

then required to:

> . . . consider the impairment at step three of the sequential analysis.  *See*
> [*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 (6th Cir. 2011)]
> (finding that the ALJ "must compare the medical evidence with the requirements
> for listed impairments in considering whether the condition is equivalent in
> severity to the medical findings for any Listed Impairment.").  In *Reynolds*, the
> court found that "by failing to analyze Reynolds' physical condition in relation to
> the Listed Impairments," the ALJ "skipped an entire step of the necessary
> analysis."  *Id.* at 416.  The *Reynolds* court found that "[t]he ALJ's error was not
> harmless, for the regulations indicate that, if a person is found to meet a Listed
> Impairment, they are disabled within the meaning of the regulations and are
> entitled to benefits; no more analysis is necessary."  *Id.* (citing 20 C.F.R. §
> 404.1520(a)(4)(iii)).

*Whitaker v. Berryhill*, No. 4:16CV38, 2017 WL 9251310, at *4 (E.D. Tenn. Aug. 11, 2017),

*adopted by* 2017 WL 4030578 (E.D. Tenn. Sept. 13, 2017); *see also Kado v. Colvin*, No.

1:15CV2044, 2016 WL 6067779, at *7 (N.D. Ohio Oct. 17, 2016).

At Step Three, the ALJ must first determine if the claimant's impairment is listed in the regulations. *Kado*, 2016 WL 6067779, at *7 (citing 20 C.F.R. § 404.1520(a)(4)).  If the claimant's impairment is not listed, the ALJ must determine whether the impairment is medically equal to one of the listings. *Kado*, 2016 WL 6067779, at *7 (citing *Reynolds*, 424 Fed.Appx. at 414-415, and 20 C.F.R. § 404.1520(a)(4)).  The complete failure to evaluate a requisite listing is harmful error, which requires remand. *Standen v. Commissioner*, No. 1:15CV482, 2016 WL 915254, at *3-*4 (N.D. Ohio Mar. 7, 2016).

### 1. Fibromyalgia

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment. *Davila v. Commissioner*, 993 F. Supp.2d 737, 754 (N.D. Ohio 2014) (citing *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).  Because of the nature of fibromyalgia, application of the usual disability analysis is challenging. *Swain v. Commissioner*, 297 F. Supp.2d 986, 990 (N.D. Ohio 2003).  Unlike many medical conditions, fibromyalgia is not amenable to objective diagnosis, and medical evidence confirming the severity of the alleged pain almost never exists. *Davila*, 993 F. Supp.2d at 755; *Swain*, 297 F. Supp.2d at 990.

In addition, fibromyalgia is not a listed impairment and it cannot meet a listing. *Walker v. Colvin*, No. 1:15CV1234, 2015 WL 13217098, at *6 (N.D. Ohio Dec. 11, 2015) (citing SSR 12-2p, 2012 WL 3104869 at *6); *Fleming v. Astrue*, No. 1:09CV373, 2010 WL 649742, at *4 (N.D. Ohio Feb. 19, 2010); *see also Bartyzel v. Commissioner*, 74 Fed.Appx. 515, 527 (6th Cir. 2003).  The ALJ must then determine whether claimant's impairment "medically equals" a listing. *Kado*, 2016 WL 6067779, at *7; *Walker*, 2015 WL 13217098, at *6.

"In order to show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Fleming*, 2010 WL 649742, at *4 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).  When addressing fibromyalgia, the ALJ should consider the guidance in Social Security Ruling (SSR) 12-2p. *Kado*, 2016 WL 6067779, at *7; SSR 12-2p, 2012 WL 3104869.  SSR 12-2p describes criteria for evaluating whether a person has a medically determinable impairment of fibromyalgia. *Luukkonen v. Commissioner*, No. 15-1561, 2016 WL 3426370, at *4-*5 (6th Cir. June 22, 2016). Under SSR 12-2p, a person has fibromyalgia if: (1) there is a history of widespread pain, in all quadrants of the body, that has persisted for at least 3 months (the pain may fluctuate in intensity and may not always be present); (2) at least 11 of 18 possible positive tender points are found on physical examination; and (3) there is evidence that other disorders were excluded as possible causes of the pain.  SSR 12-2p, 2012 WL 3104869, at *2-*3.  The claimant must have all three of these elements to have a medically determinable impairment of fibromyalgia.  SSR 12-2p, 2012 WL 3104869, at *2.

Here, at Step Two, the ALJ determined that the medical evidence of record showed that Rodway had severe impairments including migraines, fibromyalgia, and rheumatoid arthritis, among other conditions not relevant here.  (R. 10, tr., at 16-17.)  Nonetheless, "the mere diagnosis of an impairment says nothing about the severity of that impairment." *Kutscher v. Commissioner*, No. 1:13CV1389, 2014 WL 3895220, at *13 (N.D. Ohio Aug. 8, 2014) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)).  A diagnosis of fibromyalgia is not equivalent to a finding of disability, or an entitlement to disability benefits. *Stankoski v. Astrue*,

13

No. 12-4227, 2013 WL 4045974, at *4 (6th Cir. Aug. 12, 2013) (citing *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *4 (6th Cir. Jan. 15, 2008)); *Sarchet v. Chater*, 78 F.3d 305, 307 (6th Cir. 1996); *see also Bartyzel*, 74 Fed.Appx. at 527.

Because fibromyalgia cannot meet a listing at Step Three, the ALJ must determine whether claimant's fibromyalgia medically equals a listing, such as Listing 14.09D for inflammatory arthritis, or whether it combines with at least one other medically determinable impairment to medically equal a listing. *Kado*, 2016 WL 6067779, at *7 (citing SSR 12-2p, 2012 WL 3104869 at *6); *Walker*, 2015 WL 13217098, at *6. The ALJ determined that claimant's impairments failed to meet Listing 14.09 (Inflammatory Arthritis). *Id.* at 18-19. The ALJ, however, did not analyze whether Rodway's severe impairment of fibromyalgia medically equaled the severity of one of the listed impairments. *Id.* The ALJ should have determined whether claimant's fibromyalgia medically equals a listing, or whether it combines with at least one other medically determinable impairment to medically equal a listing. *Kado*, 2016 WL 6067779, at *7 (citing SSR 12-2p, 2012 WL 3104869 at *6); *Walker*, 2015 WL 13217098, at *6. The ALJ erred by not performing a complete analysis.

The analysis provided by this court in *Walker* applies equally here:

> Here, the ALJ did not even mention fibromyalgia or any potentially relevant listing, even after concluding in her Step Two analysis that fibromyalgia was a severe impairment. Application of *Reynolds* and S.S.R. 12-2p to this case results in the conclusion that the ALJ erred in failing to evaluate Plaintiff's fibromyalgia at Step Three. Without any statement from the ALJ addressing Plaintiff's fibromyalgia, the Court is unable to review the ALJ's Step Three finding. Upon remand, the ALJ must provide some analysis regarding whether Plaintiff's fibromyalgia medically equaled a listing or combined with another impairment to equal a listing. *See Cashin v. Colvin*, No. 1:12-CV-909, 2013 WL 3791439, at *5 (N.D. Ohio July 18, 2013) (Report & Recommendation of Limbert, M.J., adopted by Gaughan, J.) (remanding where the ALJ ignored the plaintiff's fibromyalgia at Step Three).

14

*Walker*, 2015 WL 13217098, at *7; *see also Standen*, 2016 WL 915254, at *3-*4 (requiring remand).

The court, however, may consider the decision in its entirety to find support, where the ALJ does not provide meaningful analysis at Step Three to support his conclusion. *Kado*, 2016 WL 6067779, at *9 (citing *Forrest v. Commissioner*, 591 Fed. Appx. 359, 366 (6th Cir. 2014)); *see generally Walker*, 884 F.2d at 245 (court examines all the evidence in the record); *Hubbard*, 2012 WL 883612, at *5 (quoting *Heston*, 245 F.3d at 535). Even after considering the full decision, the court finds no analysis setting forth a medical equivalency determination for fibromyalgia. Although the Commissioner contends that "the ALJ provided an extensive summary of Plaintiff's treatment history," which the Commissioner claims demonstrates that Rodway's fibromyalgia would fail to medically equal a Listing (R. 15, PageID # 1415-1417), the ALJ's decision did not include that analysis or reach that specific conclusion.

The Commissioner also argues that the failure to consider claimant's fibromyalgia at Step Three can be considered harmless error which does not require remand. (R. 15, PageID #: 1413-1414.) This court, however, has found that "failure to evaluate a requisite listing is not 'merely a formalistic matter of procedure,'" and that remand is required. *Standen*, 2016 WL 915254, at *4 (quoting *Reynolds*, 424 Fed.Appx. at 416). The court found this to be so, even in a case where it was not immediately apparent that claimant would meet the listing. *Id.*

The ALJ did not determine whether claimant's severe impairment of fibromyalgia medically equals a listing, or whether it combines with at least one other medically determinable impairment to medically equal a listing. Therefore, the ALJ erred at Step Three, and the case should be remanded for a proper consideration of claimant's fibromyalgia at Step Three.

15

## 2.  Migraines

The claimant also argues that the ALJ determined her migraines were a severe impairment, "but failed to provide explanation as to whether the symptoms and resulting functional limitations meet or equal any applicable listing."  (R. 13, PageID #: 1392, citing R. 10, tr., at 16.)  A migraine headache is not a listed impairment, and therefore, cannot meet a listing. *Beerman v. Commissioner*, No. 2:16CV896, 2018 WL 1187804, at *7 (S.D. Ohio Mar. 7, 2018) (citing *Coscarelli v. Commissioner*, No. 1:15CV817, 2016 WL 5423476, at *3 (W.D. Mich. Sept. 29, 2016); *Shepard v. Commissioner*, No. 3:14CV25, 2015 WL 4554290, at *4 n.3 (S.D. Ohio Mar. 24, 2015)); *see generally* 81 Fed. Reg. 43049.  As with fibromyalgia, discussed above, because the ALJ determined that Rodway's migraines are a severe impairment, the ALJ then had to determine whether the impairment is medically equal to one of the listings.  *Kado*, 2016 WL 6067779, at *7 (citing *Reynolds*, 424 Fed.Appx. at 414-415, and 20 C.F.R. § 404.1520(a)(4)).

After finding that Rodway had a severe impairment of migraines at Step Two (R. 10, tr., at 16), the ALJ explicitly addressed her migraine headaches at Step Three as follows:

> The claimant's migraine headaches fail to meet or medically equal Listing 11.00 of Appendix 1 impairments.  The medical record fails to establish evidence of any neurological deficits.  Specifically, the record fails to demonstrate evidence of epilepsy (11.02), vascular insult to the brain (11.04), a benign brain tumor (11.05), Parkinson syndrome (11.06), cerebral palsy (11.07), spinal cord disorders (11.08), multiple sclerosis (11.09), amyotrophic lateral sclerosis (ALS) (11.10), post-polio syndrome (11.11), myasthenia gravis (11.12), muscular dystrophy (11.13), peripheral neuropathy (11.14), neurodegenerative disorders of the central nervous system (11.17), traumatic brain injury (11.18), coma or persistent vegetative state (11.20), and motor neuron disorders other than ALS (11.22).  A review of the medical evidence of record reveals no focal neurological deficits and no abnormal diagnostic studies.  Accordingly, I find that the claimant's migraine headaches fail to meet or medically equal listing level severity.

(R. 10, tr., at 18.)  Rodway contends the analysis is flawed and the ALJ erred by not applying the evaluative process set forth in section 11.00G in the Listing of Impairments.  (R. 13, PageID #: 1392-93.)

The criteria in the Listing of Impairments that the Commissioner uses to evaluate disability claims involving neurological disorders was revised comprehensively on July 1, 2016, with the new regulations effective September 29, 2016, shortly before the ALJ's October 28, 2016 decision.  *See* Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048, 2016 WL 3551949 (July 1, 2016); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00 et seq.  The regulations under the new listing 11.00 are more extensive than the previous version and include, among others, section 11.00G(1).[3]  *Id.* at 81 Fed. Reg. 43053-43054.  Specifically, section 11.00G(1) provides:

> G. How do we evaluate limitations in physical and mental functioning under these listings?
>
> 1. Neurological disorders may manifest in a combination of limitations in physical and mental functioning.  We consider all relevant information in your case record to determine the effects of your neurological disorder on your physical and mental functioning.  To satisfy the requirement described under 11.00G, your neurological disorder must result in a marked limitation in physical functioning and a marked limitation in at least one of four areas of mental functioning: Understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  If your neurological disorder results in an extreme limitation in at least one of the four areas of mental functioning, or results in marked limitation in at least two of the four areas of mental functioning, but you do not have at least a marked limitation in your physical functioning, we will consider whether your condition meets or medically equals one of the mental disorders body system listings, 12.00.

---

[3]  At that time, the Commissioner declined to create a separate listing for various neurological disorders, such as migraines, or to specifically recognize migraines as a disabling impairment.  *Id.* at 81 Fed. Reg. 43049.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, section 11.00G(1).  An ALJ evaluating neurological disorders, under the regulations, is required to apply the evaluative process set forth in section 11.00G, which addresses, for example, whether a claimant has a marked limitation in physical functioning and a marked limitation in at least one of four areas of mental functioning.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, section 11.00G(1).

Courts in this circuit have determined that the "Listing § 11.03 [previous section for epilepsy] "is the most analogous listing for considering medical equivalence of migraine headaches."  *Beerman*, 2018 WL 1187804, at *7 (quoting *Shepard*, 2015 WL 4554290, at *4 n.3); *see also Davis v. Berryhill*, No. CV 16-14470, 2017 WL 5493137, at *2 (E.D. Mich. Nov. 16, 2017), adopted by 2017 WL 6206368 (E.D. Mich. Dec. 8, 2017); *Fedarko v. Commissioner*, No. 1:12CV1075, 2013 WL 5353375, at *3 (N.D. Ohio Sept. 24, 2013) (same).  Epilepsy and related neurological disorders that may manifest in a combination of limitations in physical and mental functioning are evaluated under Listing 11.00.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, section 11.00A.  Each of the Listing 11.00 subparts requires specific application of the general elements, and then, for example, epilepsy must be documented by a detailed description of a typical seizure and characterized as one of four types of seizures.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02 (Epilepsy).  The regulations further specify the evidence needed to document a claimant's neurological disorder:

> We need both medical and non-medical evidence (signs, symptoms, and laboratory findings) to assess the effects of your neurological disorder.  Medical evidence should include your medical history, examination findings, relevant laboratory tests, and the results of imaging.  Imaging refers to medical imaging techniques, such as x-ray, computerized tomography (CT), magnetic resonance imaging (MRI), and electroencephalography (EEG).  * * *  In addition, the medical evidence may include descriptions of any prescribed treatment and your response to it.  We consider non-medical evidence such as statements you or

18

others make about your impairments, your restrictions, your daily activities, or your efforts to work.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00B(1).

The court finds that the ALJ's Step Three analysis of claimant's migraine headaches is incomplete.  Although the ALJ considered a number of neurological impairments, the decision did not apply the appropriate analysis set forth in the section 11.00G(1).  Considering all the evidence in the record, *Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5; there are records and medical opinion evidence relevant to the analysis, but which the ALJ did not assess under the appropriate evaluative process.  (R. 13, PageID #: 1392-1393; *see, e.g.*, R. 10, tr., at 885-886, 897-898.)  The case should be remanded for a more thorough evaluation of Rodway's migraine headaches at Step Three, consistent with the pertinent regulations.  *See generally Standen*, 2016 WL 915254, at *3-*4; *Walker*, 2015 WL 13217098, at *7.

Although I recommend remand for the foregoing reasons, this decision will analyze claimant's remaining arguments because this is a report and recommendation.

### B.  SSR 96-8p and RFC Finding

Rodway also contends that the ALJ erred by not following the requirements of SSR 96-8p when making the RFC finding.  (R. 13, PageID #: 1373, 1394-1396.)  She contends that the RFC is not supported by substantial evidence because it does not account for exertional limitations associated with extreme fatigue resulting from fibromyalgia, as well as time spent off-task and absent as a result of her fibromyalgia and chronic migraine headaches.  *Id.* at 1394. Rodway argues that the limiting effects of these impairments is greater than reflected in the RFC. *Id.* at 1395.

The claimant asserts that, according to SSR 96-8p, the ALJ's RFC assessment must be based on the entire case record, including her medical history, treatment, reports of daily activities, medical source statements, symptoms, evidence from attempts to work, and any other relevant evidence in the record. (R. 13, PageID #: 1394, citing SSR 96-8p.)  The court, however, finds that the ALJ's decision reflects a full consideration of all these factors.  *See generally* R. 10, tr., at 22-34.

The ALJ acknowledged that in making the RFC determination he "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520€and 404.1545; SSR 96-8p)."  (R. 10, tr., at 16).  Further, the ALJ's decision stated that:

> . . . the claimant's records fail to demonstrate that she is limited or restricted from work activity.  Nonetheless, the claimant's allegations of pain and fatigue have been considered in the light most favorable to the claimant and reflected in the residual functional capacity (SSR 96-3p; 96-4p; 96-7p).  I considered the claimant's allegations of pain, fatigue, and other allegations and reduced the exertional level to light.

(R. 10, tr., at 26.)  The ALJ considered the medical evidence presented by the claimant, and stated his reasons for not fully adopting various opinion evidence.  *Id.* at 27-34.  For example, the ALJ noted that Dr. Mileti's assessment that claimant was unable to function in a work setting was inconsistent with her finding that Rodway's rheumatoid arthritis and fibromyalgia had a good response to treatment and her prognosis was good.  *Id.* at 27, citing MER.

The ALJ gave great weight to the opinion of the state agency medical consultants, Dr. Hinzman and Dr. Gardner, because he found their opinions were well-grounded in the medical evidence of record, while the evidence received into the record after they rendered their opinions did not provide any new or material information that would alter any findings about the claimant's RFC.  (R. 10, tr., at 26-27.)  State agency doctors are considered highly-qualified

20

experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e).  An ALJ may give more weight to the opinions of consultative sources when the treating physicians' opinions are not well-supported by the objective medical records.  *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014)

Rodway points to evidence that could support a contrary conclusion to the ALJ's determination.  (R. 10, PageID #: 1395.)  The relevant issue, however, is not whether there is evidence to support a ruling different than that reached by the ALJ.  *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014).  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion.  *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545*; Kinsella*, 708 F.2d at 1059.

The court finds the ALJ's RFC is supported by substantial evidence, and the record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the ALJ's RFC determination.  *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

      C.   <u>The ALJ's Credibility Determination</u>

Rodway's final assignment of error asserts the ALJ erred by failing to follow SSR 16-3p, when assessing her credibility.  (R. 13, PageID #: 1374, 1396-1398.)  The ALJ's credibility

assessment, according to Rodway, is not supported by substantial evidence and fails to consider the impact of her conditions.  *Id.* at 1397.

The claimant's statements as to pain or other symptoms will not alone establish that she is disabled.  *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)).  The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim.  *Rogers*, 486 F.3d at 247; *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017).[4]  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  *Id.* (*citing* 20 C.F.R. § 416.929(a)).  The ALJ here determined that Rodway's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. 10, tr., at 22.)

If the first part of the test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."  *Rogers*, 486 F.3d at 247.  Social Security Ruling 16-3p lists the factors relevant to the ALJ's determination at this step.  These factors include:  the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms;  the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has

---

[4]  Social Security Ruling (SSR) 16-3p superseded SSR 96-7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *1.  The decision here was dated October 28, 2016.  (R. 10, tr., at 37.)

used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)).  An ALJ is not required to expressly address all the factors listed in SSR 16-3p, but should sufficiently articulate his or her assessment of the evidence to assure the court that he or she considered all relevant evidence.  *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (citing *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1055 (E.D. Wis. 2005)); *see also Williams v. Astrue*, No. CIV.A.3:07-CV-0965-N, 2008 WL 4490792, at *10 (N.D. Tex. Oct. 3, 2008).

When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must determine the credibility of the claimant's pain allegations "based on a consideration of the entire case record."  *Rogers*, 486 F.3d at 247; *see also Luukkonen*, 2016 WL 3426370, at *5.  To the extent that the ALJ's findings are based on the claimant's credibility, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  In addition, the ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility; rather, the ALJ's determinations "must find support in the record."  *Rogers*, 486 F.3d at 247-248.

The ALJ determined that Rodway's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.  (R. 10, tr., at 22.)  According to the ALJ, claimant's allegations that she is incapable of all work activity were not persuasive "because of significant inconsistencies in the record as a whole."  *Id.*  The ALJ provided a lengthy discussion of the evidence of record to

23

support his findings and concluded the evidence failed to demonstrate that claimant is limited or restricted from work activity.  *Id.* at 22-26.  The decision demonstrates "the claimant's allegations of pain and fatigue have been considered in the light most favorable to the claimant and reflected in the residual functional capacity (SSR 96-3p; 96-4p; 96-7p)."  *Id.*  Indeed, the ALJ considered claimant's allegations of pain, fatigue, and other symptoms in reducing the RFC exertional level to light work.  *Id.*  The court finds that the ALJ provided ample support for the conclusion that Rodway's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record.

Again, Rodway points to evidence that could support a contrary conclusion to the ALJ's determination.  (R. 10, PageID #: 1397.)  As discussed above, the issue is not whether there is evidence to support a ruling different than that reached by the ALJ.  *Lebro*, 2014 WL 3749221, at *11.  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion.  *See Kidd*, 2001 WL 345787, at *3; *Martin*, 1996 WL 428403, at *4.  The court finds that the ALJ's credibility determination is supported by substantial evidence, set forth in detail in the decision.

## VIII.  CONCLUSION

The ALJ erred at Step Three of the underlying analysis by not determining whether claimant's severe impairment of fibromyalgia medically equals a listing, or whether it combines with at least one other medically determinable impairment to medically equal a listing.  In addition, the ALJ's Step Three analysis regarding claimant's migraine headaches is incomplete, because it did not perform the pertinent analysis following section 11.00G(1).  The undersigned,

therefore, recommends that the Commissioner's final decision be vacated and remanded for a more thorough evaluation of Rodway's fibromyalgia and migraine headaches at Step Three.

    The undersigned, however, recommends that Rodway's remaining arguments be rejected.


                               s/ David A. Ruiz
                               David A. Ruiz
                               United States Magistrate Judge


Date: January 24, 2019


## OBJECTIONS

    Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time may waive the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).